UNITED STATES DISTRICT COURT **SEALED**
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 11-CR-10346 |
| ) | **VIOLATIONS:** |
| v. ) | |
| ) | 18 U.S.C. §1343 (Wire Fraud) |
| SIREWL R. COX (1), ) | 18 U.S.C. §1344 (Bank Fraud) |
| LORD R. ALLAH (2), ) | 18 U.S.C. §1957 (Unlawful Monetary Transactions) |
| ) | 18 U.S.C. §§981, 982 (Forfeiture) |
| Defendants. ) | 28 U.S.C. §2461 (Forfeiture) |
| ) | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At times relevant to this Indictment:

1.    Defendant SIREWL R. COX ("COX") was an individual who resided in Massachusetts.

2.    COX owned and operated City Real Estate & Business Brokerage Inc. ("City Real Estate"), a Massachusetts corporation with an address in Canton, Massachusetts.

3.    COX also owned and operated Strategy Investments Inc. ("Strategy Investments"), a Massachusetts corporation with an address in Boston, Massachusetts.

4.    Defendant LORD R. ALLAH, also known as RICHARD H. MATTHEWS, ("ALLAH") was an individual who resided in Massachusetts.

5.    ALLAH owned and did business as L.A. Properties & Management Corp. ("L.A. Properties").

6.      R.K. was an individual who lived in Roslindale, Massachusetts. R.K. was initially employed as a paralegal by A.T. III, P.C., a law firm in Charlestown, Massachusetts, and later by F. & Associates, a law firm in Needham, Massachusetts. R.K. was not licensed to practice law and, therefore, was not authorized to act as a closing agent for real estate transactions in the Commonwealth of Massachusetts. Despite this fact, R.K. acted as a closing agent for the real estate transactions set forth below.

7.      R.K. owned and operated One Stop Real Estate LLC ("One Stop"), a Massachusetts domestic limited liability company with an address in Roslindale, Massachusetts.

8.      A.T. was an attorney licensed to practice law in the Commonwealth of Massachusetts. A.T. maintained a law office in Charlestown, Massachusetts and controlled bank account no. xxxxxx8856 at Citizens Bank in Massachusetts.

9.      R.F. was an attorney licensed to practice law in the Commonwealth of Massachusetts. R.F. maintained a law office in Needham, Massachusetts and controlled bank account no. xxxxxxx9296 at Sovereign Bank New England in Massachusetts.

### THE STRAW BUYERS

10.     Individuals referred to herein as "L.B-A.", "L.B.", "D.F.", "L.L.", "K.P.", "C.R.", "S.G-R.", "C.S.", "S.V.", and "P.W." were persons who were recruited to serve as "straw buyers." Defendant ALLAH also participated in the fraud as a straw buyer.

11.     As used in this Indictment, the term "straw buyer" refers to an individual in whose name real property was purchased and in whose name financing from the mortgage lenders was fraudulently obtained. In most instances, the straw buyers made no down payment, paid no closing

2

costs, had no intention to reside in the real property, and had no personal capacity or personal intention to make the mortgage loan payments.

## THE MORTGAGE LENDERS

12.     BNC Mortgage, Inc. ("BNC Mortgage") was a real estate mortgage company with an address at P.O. Box 19656, Irvine, California.

13.     Citibank, N.A. ("Citibank") was a national banking association with an address at 3900 Paradise Road, Suite 127, Las Vegas, Nevada.

14.     CitiMortgage, Inc. ("CitiMortgage") was a real estate mortgage company with an address at 1000 Technology Drive, O'Fallon, Missouri.

15.     Countrywide Bank, FSB ("Countrywide Bank") was a federal savings bank with an address at 1199 North Fairfax Street, Suite 500, Alexandria, Virginia.

16.     Countrywide Home Loans, Inc. ("Countrywide Home Loans") was a corporation with an address at 4500 Park Granada, MSN# SVB-314, Calabasas, California.

17.     First Franklin Financial Corp. ("First Franklin") was an originator of home loans with an address at 2150 North First Street, San Jose, California.

18.     First Horizon Home Loans ("First Horizon"), a division of First Tennessee Bank, N.A., a National Bank, was a real estate mortgage company with an address at 4000 Horizon Way, Irving, Texas.

19.     Homecomings Financial, LLC ("Homecomings") was a limited liability company with an address at 9 Sylvan Way, Suite 100, Parsippany, New Jersey.

20.     IndyMac Bank, F.S.B. ("IndyMac Bank") was a federally chartered savings bank with an address at 155 North Lake Avenue, Pasadena, California.

21.     JP Morgan Chase Bank, N.A. ("JP Morgan Chase Bank") was a federally insured financial institution with an address at 1111 Polaris Parkway, Columbus, Ohio.

22.     Long Beach Mortgage Corp. ("Long Beach Mortgage"), a division of Washington Mutual Bank, N.A., was a real estate mortgage company with addresses at 1400 South Douglass Road, Suite 100, Anaheim, California and 100 Walnut Avenue, 6th Floor, Clark, New Jersey.

23.     Mortgage Lenders Network USA, Inc. ("MLN") was a real estate mortgage company with an address at 213 Court Street, Middletown, Connecticut.

24.     Nation One Mortgage Company, Inc. ("Nation One") was a corporation with an address at 700 Longwater Drive, Norwell, Massachusetts.

25.     Washington Mutual Bank, F.A. ("Washington Mutual Bank") was a federal savings bank with addresses at 2273 N. Green Valley Parkway, Suite 14, Henderson, Nevada and 1400 South Douglass Road, Suite 100, Anaheim, California.

26.     Wells Fargo Bank, N.A. ("Wells Fargo Bank") was a National Association with an address at P.O. Box 5137, Des Moines, Iowa.

27.     BNC Mortgage, Citibank, CitiMortgage, Countrywide Bank, Countrywide Home Loans, First Franklin, First Horizon, Homecomings, IndyMac Bank, JP Morgan Chase Bank, Long Beach Mortgage, MLN, Nation One, Washington Mutual Bank, and Wells Fargo Bank are collectively referred to herein as "the mortgage lenders."

## MANNER AND MEANS

28.     Beginning not later than in or about March 2006, and continuing through in or about August 2008, COX and ALLAH – acting in concert with others known and unknown to the Grand Jury – defrauded and obtained money and property from various mortgage lenders by means of

4

material false and fraudulent pretenses, representations and promises, in connection with the financing of residential real estate transactions in Massachusetts.

      29.    The fraud was executed in the following manner:

          a.    COX identified multiple-family buildings for sale and recruited and arranged for straw buyers to purchase the buildings. COX and others acting in concert with him then arranged for the buildings to be converted into condominiums so that COX and others acting in concert with him could sell individual units in the buildings that had been purchased.

          b.    COX, ALLAH, and others acting in concert with them next recruited straw buyers to purchase the condominium units contained in those buildings. In recruiting straw buyers, at various times, COX, ALLAH, and others acting in concert with them:

              i.    Paid straw buyers to participate in the multiple family building and condominium unit purchases;

             ii.    Arranged for straw buyers to obtain mortgage loans from mortgage lenders to finance the purchase of condominium units;

            iii.    Promised straw buyers that they did not have to make down payments or pay any funds in connection with the condominium unit purchases;

            iv.    Promised straw buyers that the properties would be maintained on behalf of the straw buyers; and

v.     Promised straw buyers that tenants would be obtained on behalf of the straw buyers to rent the condominium units and mortgage payments would be paid on behalf of the straw buyers.

c.     COX, ALLAH, and others acting in concert with them caused mortgage loan applications and supporting documents to be prepared and submitted to mortgage lenders that contained various misrepresentations, including: (i) falsely inflated purchase prices for the condominiums; (ii) false representations regarding straw buyers' monthly income; (iii) false representations regarding straw buyers' employment; (iv) false representations that straw buyers owned substantial assets; and (v) false representations that straw buyers intended to occupy the condominium units as their "primary" residences.

d.     COX and others acting in concert with him arranged with R.K. to conduct closings for the mortgage loans in the names of straw buyers. COX, ALLAH, R.K., and others acting in concert with them caused false and fraudulent loan closing documents to be prepared, including HUD-1 settlement statements that falsely represented that straw buyers had made down payments, that falsely represented that straw buyers had paid other funds in connection with the condominium purchases, and that falsely represented how the proceeds of the mortgage loans were disbursed.

e.     Prior to disbursing mortgage loan proceeds for relevant property purchases, R.K. routinely confirmed that wire transfers of mortgage loan proceeds had

6

been received in the closing attorney's bank account. R.K. confirmed receipt

of mortgage loan proceeds: (i) by reviewing facsimile transmissions sent to

the closing attorney's office by the closing attorney's bank; (ii) through the

internet; and (iii) by telephone calls with the closing attorney's bank.

30.     Because the straw buyers lacked either the means or the intention of paying their

mortgages, mortgage loans went into default and subsequently into foreclosure.

## THE FRAUDULENT TRANSACTIONS

### 11 ROXTON STREET
### Dorchester, Massachusetts

31.     In or about March 2006, COX identified a multiple-family building located at 11

Roxton Street, Dorchester, Massachusetts as a property available for purchase, and COX

recruited D.F. to act as a straw buyer for the transaction.

32.     On or about March 29, 2006, D.F. purchased 11 Roxton Street through mortgage

loans from Nation One in the aggregate amount of $587,700. Material false representations

made in connection with the mortgage loans included representations regarding D.F.'s

employment and monthly income.

33.     On or about March 29, 2006, Nation One wired mortgage loan proceeds to the

account of the closing attorney in connection with the purchase of 11 Roxton Street.

34.     On or about March 30, 2006, COX was paid $20,000 by a check drawn on the

account of the closing attorney. The check purported to be payment for a brokerage commission

and was deposited into an account of Strategy Investments – an account owned and controlled by

COX.

7

35.     In or about April 2006, COX recruited and arranged for two straw buyers to purchase units in the building located at 11 Roxton Street: (a) L.B-A. for Units 1 and 2; and (b) S.G-R. for Unit 3.

### Unit 1

36.     On or about April 25, 2006, L.B-A. purchased 11 Roxton Street, Unit 1 through mortgage loans from MLN in the aggregate amount of $375,000.  Material false representations made in connection with the mortgage loans included representations regarding L.B-A.'s monthly income and that L.B-A. intended to occupy the unit as L.B-A.'s "primary" residence.

37.     On or about April 26, 2006, MLN wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 11 Roxton Street, Unit 1.

38.     On or about April 26, 2006, COX was paid $35,000 by a check drawn on the account of the closing attorney and deposited into an account of Strategy Investments – an account owned and controlled by COX.

### Unit 2

39.     On or about April 25, 2006, L.B-A. purchased 11 Roxton Street, Unit 2 through mortgage loans from First Franklin in the aggregate amount of $368,000.  Material false representations made in connection with the mortgage loans included representations regarding L.B-A.'s monthly income and that L.B-A. intended to occupy the unit as L.B-A.'s "primary" residence.

40.     On or about April 25, 2006, First Franklin wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 11 Roxton Street, Unit 2.

41.     On or about April 26, 2006, COX was paid $35,000 by a check drawn on the account of the closing attorney and deposited into an account of Strategy Investments – an account owned and controlled by COX.

### *Unit 3*

42.     On or about April 25, 2006, S.G-R. purchased 11 Roxton Street, Unit 3 through a mortgage loan from IndyMac Bank in the amount of $375,000.  Material false representations made in connection with the mortgage loan included representations regarding S.G-R.'s monthly and annual income, and that S.G-R. intended to occupy the unit as S.G-R.'s "primary" residence.

43.     On or about April 26, 2006, IndyMac Bank wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 11 Roxton Street, Unit 3.

44.     On or about April 26, 2006, COX was paid $35,000 by a check drawn on the account of the closing attorney and deposited into an account of Strategy Investments – an account owned and controlled by COX.

45.     On or about April 26, 2006, COX was paid $324,305.08 by a check drawn on the account of the closing attorney and deposited into an account of City Real Estate – an account owned and controlled by COX.  These funds represented most of the proceeds from the sale of the three units at 11 Roxton Street.

### 153 RIVER STREET
### Mattapan, MA

46.     In or about November 2006, COX identified a multiple-family building located at 153 River Street, Dorchester, Massachusetts as a property available for purchase, and COX recruited C.S. to act as a straw buyer for the transaction.

9

47.     On or about November 30, 2006, C.S. purchased 153 River Street through a mortgage loan from Long Beach Mortgage in the amount of $335,200 and a mortgage loan from Citibank in the amount of $83,800.

48.     On or about November 30, 2006, Long Beach Mortgage and Citibank wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 153 River Street.

49.     In or about November 2006, COX recruited and arranged for three straw buyers to purchase units in the building located at 153 River Street: (a) P.W. for Unit 1; (b) C.R. for Unit 2; and (c) ALLAH for Unit 3.

### *Unit 1*

50.     On or about March 29, 2007, P.W. purchased 153 River Street, Unit 1 through a mortgage loan from First Franklin in the amount of $315,000. Material false representations made in connection with the mortgage loans included representations regarding P.W.'s employment and monthly income, and that P.W. intended to occupy the unit as P.W.'s "primary" residence.

51.     On or about March 29, 2007, First Franklin wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 153 River Street, Unit 1.

52.     On or about March 29, 2007, R.K. disbursed loan proceeds relating to the fraudulent transaction from the closing attorney's account.

### *Unit 2*

53.     On or about March 29, 2007, C.R. purchased 153 River Street, Unit 2 through a mortgage loan from CitiMortgage in the amount of $315,000. Material false representations

10

made in connection with the mortgage loan included representations that C.R. intended to occupy the unit as C.R.'s "primary" residence, that a $25,000 deposit into C.R.'s bank account represented a "referral fee" owed to C.R. by City Real Estate, that C.R. was renting two units in a building he owned and obtaining monthly rent of $1,800 per unit, and that C.R. paid $470.94 at the closing.

54.      On or about March 29, 2007, CitiMortgage wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 153 River Street, Unit 2.

55.      On or about April 2, 2007, COX was paid $75,266.97 by a check drawn on the account of the closing attorney and deposited into an account of City Real Estate – an account owned and controlled by COX.  These funds represented a portion of the cash due to the purported seller, C.S.

56.      On or about April 2, 2007, COX was paid $75,266.97 by a check drawn on the account of the closing attorney and deposited into an account of Strategy Investments – an account owned and controlled by COX.  These funds represented a portion of the cash due to the purported seller, C.S.

### Unit 3

57.      On or about March 30, 2007, ALLAH purchased 153 River Street, Unit 3 through a mortgage loan from BNC Mortgage in the amount of $283,500.  Material false representations made in connection with the mortgage loan included representations that ALLAH intended to occupy the unit as ALLAH's "primary" residence.

58.      On or about March 30 2007, BNC Mortgage wired mortgage loan proceeds to the account of the closing attorney in connection with the purchase of 153 River Street, Unit 3.

59.     On or about April 3, 2007, COX was paid $151,464.30 by a check drawn on the account of the closing attorney and deposited into an account of City Real Estate – an account owned and controlled by COX.  These funds represented a portion of the cash due to the purported seller, C.S.

### 148 STANWOOD STREET
### Dorchester, Massachusetts

60.     In or about April 2007, COX identified a multiple-family building located at 148 Stanwood Street, Dorchester, Massachusetts as a property available for purchase, and COX recruited C.S. to act as a straw buyer for the transaction.

61.     On or about April 4, 2007, C.S. purchased 148 Stanwood Street through a mortgage loan from Countrywide Home Loans in the amount of $456,750 and a mortgage loan from Countrywide Bank in the amount of $91,350. Material false representations made in connection with the mortgage loans included representations regarding C.S.'s monthly income and that C.S. intended to occupy the building as C.S.'s "primary" residence.

62.     On or about April 4, 2007, Countrywide Home Loans and Countrywide Bank wired funds to the account of the closing attorney in connection with the purchase of 148 Stanwood Street.

63.     In or about April 2007, COX and an individual named K.J. recruited and arranged for K.P. to purchase Unit 1 at 148 Stanwood Street, COX recruited and arranged for L.B-A. to purchase Unit 2 at 148 Stanwood Street, and COX recruited and arranged for L.B. to purchase Unit 3 at 148 Stanwood Street.

### *Unit 1*

64.     On or about June 19, 2007, K.P. purchased 148 Stanwood Street, Unit 1 through a mortgage loan from IndyMac Bank in the amount of $346,750. Material false representations made in connection with the mortgage loan included representations regarding K.P.'s employment and monthly income, that K.P. intended to occupy the unit as K.P.'s "primary" residence, that K.P. owned an investment account balance of $34,064, and that K.P. paid $18,282.40 at the closing.

65.     On or about June 19, 2007, IndyMac Bank wired funds to the account of the closing attorney in connection with the purchase of 148 Stanwood Street, Unit 1.

66.     On or about June 20, 2007, COX was paid $29,527.17 by a check drawn on the account of the closing attorney and deposited into an account of Strategy Investments – an account owned and controlled by COX.

67.     On or about June 20, 2007, COX was paid $29,527.18 by a check drawn on the account of the closing attorney and deposited into an account of City Real Estate – an account owned and controlled by COX.

### *Unit 2*

68.     On or about June 19, 2007, L.B-A. purchased 148 Stanwood Street, Unit 2 through a mortgage loan from Washington Mutual Bank in the amount of $328,500. Material false representations made in connection with the mortgage loan included representations regarding L.B-A.'s monthly income and that L.B-A. paid $36,034.44 at the closing.

69.     On or about June 19, 2007, Washington Mutual Bank wired funds to the account of the closing attorney in connection with the purchase of 148 Stanwood Street, Unit 2.

13

70.   On or about June 19, 2007, R.K. disbursed loan proceeds relating to the fraudulent transaction from the closing attorney's account.

### Unit 3

71.   On or about July 24, 2007, L.B. purchased 148 Stanwood Street, Unit 3 through a mortgage loan from Homecomings in the amount of $328,500.  Material false representations made in connection with the mortgage loan included representations regarding L.B.'s monthly income, that L.B. intended to occupy the unit as L.B.'s "primary" residence, that L.B. owned an investment account with Strategy Investments valued at $23,373, and that L.B. paid $36,511.09 at the closing.

72.   On or about July 24, 2007, Homecomings wired funds to the account of the closing attorney in connection with the purchase of 148 Stanwood Street, Unit 3.

73.   On or about July 25, 2007, COX was paid $139,853 by a check drawn on the account of the closing attorney and deposited into an account of City Real Estate – an account owned and controlled by COX.

### 111 FULLER STREET
### Dorchester, Massachusetts

74.   In or about August 2007, COX identified a multiple-family building located at 111 Fuller Street, Dorchester, Massachusetts as a property available for purchase, and COX recruited L.L. to act as a straw buyer for the transaction.

75.   On or about October 1, 2007, L.L. purchased 111 Fuller Street through a mortgage loan from CitiMortgage in the aggregate amount of $434,700.

14

76.     On or about September 28, 2007, CitiMortgage wired funds to the account of the closing attorney in connection with the purchase of 111 Fuller Street.

77.     In or about October 2007, COX and K.J. arranged for K.P. to purchase Unit 1 at 111 Fuller Street, and COX and ALLAH recruited and arranged for S.V. to purchase Units 2 and 3 at 111 Fuller Street.

### *Unit 1*

78.     On or about November 5, 2007, K.P. purchased 111 Fuller Street, Unit 1 through a mortgage loan from JP Morgan Chase Bank in the amount of $306,000. Material false representations made in connection with the mortgage loan included representations regarding K.P.'s employment and monthly income, that K.P. intended to occupy the unit as K.P.'s "primary" residence, that K.P. owned an investment or Citizens Bank account balance of $50,000, that K.P. made a down payment of $500, and that K.P. paid $35,192.16 at closing.

79.     On or about November 5, 2007, JP Morgan Chase Bank wired funds to the account of the closing attorney in connection with the purchase of 111 Fuller Street, Unit 1.

80.     On or about November 5, 2007, R.K. disbursed loan proceeds relating to the fraudulent transaction from the closing attorney's account.

### *Unit 3*

81.     On or about November 5, 2007, S.V. purchased 111 Fuller Street, Unit 3 through a mortgage loan from First Horizon in the amount of $331,550. Material false representations made in connection with the mortgage loan included representations regarding S.V.'s monthly income, that S.V. intended to occupy the unit as S.V.'s "primary" residence, that S.V. made a $500 down payment, and that S.V. paid $17,450.14 at the closing.

15

82.     On or about November 5, 2007, First Horizon wired funds to the account of the closing attorney in connection with the purchase of 111 Fuller Street, Unit 3.

83.     On or about November 7, 2007, COX was paid $127,022.12 by a check drawn on the account of the closing attorney and deposited into an account of City Real Estate – an account owned and controlled by COX.

### *Unit 2*

84.     On or about December 21, 2007, S.V. purchased 111 Fuller Street, Unit 2 through a mortgage loan from Wells Fargo Bank in the amount of $331,550. Material false representations made in connection with the mortgage loan included representations regarding S.V.'s monthly income, that S.V. intended to occupy the unit as S.V.'s "primary" residence, that S.V. made a $500 down payment, and that S.V. paid $16,999.28 at the closing.

85.     On or about December 21, 2007, Wells Fargo Bank wired funds to the account of the closing attorney in connection with the purchase of 111 Fuller Street, Unit 2.

86.     On or about December 21, 2007, COX was paid $152,852.36 by a wire from the account of the closing attorney to an account of City Real Estate – an account owned and controlled by COX.

87.     On or about December 22, 2007, ALLAH was paid $99,450 by a check drawn on the account of the closing attorney and deposited into an account of L.A. Properties – an account owned and controlled by ALLAH.

16

## COUNTS ONE THROUGH FIVE
### (Wire Fraud – 18 U.S.C. §1343)

88.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 87 of this Indictment and further charges that:

89.   On or about the following dates, in the District of Massachusetts and elsewhere,

### SIREWL R. COX (1)
### and
### LORD R. ALLAH (2),

defendants herein, together with others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, did cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, to wit, wire transfers of, and facsimile, internet, and telephone confirmations and other transmissions relating to wire transfers of, mortgage loan proceeds into the account of R.F., No. xxxxxxx9296, at Sovereign Bank New England in Massachusetts as follows:

| Count | Defendant(s) | Date | Property | Wire Origin | Wire Amount |
|-------|--------------|------|----------|-------------|-------------|
| 1 | Sirewl R. Cox | 3/29/2007 | 153 River Street, Unit 1, Mattapan, MA | National City Bank, Cleveland, OH | $320,189.06 |
| 2 | Sirewl R. Cox | 3/29/2007 | 153 River Street, Unit 2, Mattapan, MA | Citibank, N.A., New York, NY | $319,228.79 |
| 3 | Sirewl R. Cox Lord R. Allah | 3/30/2007 | 153 River Street, Unit 3, Mattapan, MA | Lehman Bros. Bank, F.S.B., Wilmington, DE | $288,004.62 |

| Count | Defendant(s) | Date | Property | Wire Origin | Wire Amount |
|-------|--------------|------|----------|-------------|-------------|
| 4 | Sirewl R. Cox | 7/24/2007 | 148 Stanwood Street, Unit 3, Dorchester, MA | JP Morgan Chase Bank, New York, NY | $332,699.36 |
| 5 | Sirewl R. Cox Lord R. Allah | 11/05/2007 | 111 Fuller Street, Unit 3, Dorchester, MA | First Tennessee Bank, N.A., Memphis, TN | $337,401.84 |

All in violation of Title 18, United States Code, Sections 1343 and 2

## COUNTS SIX THROUGH TEN
### (Bank Fraud – 18 U.S.C. §1344)

90.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-87 of this Indictment and further charges that:

91.     On or about the following dates, in the District of Massachusetts and elsewhere,

### SIREWL R. COX (1)
### and
### LORD R. ALLAH (2),

defendants herein, together with others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme and artifice to defraud the federally insured financial institutions set forth below, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of the federally insured financial institutions set forth below, by means of false and fraudulent pretenses, representations and promises, concerning material facts and matters in connection with the following mortgage loans:

| Count | Defendant(s) | Date | Mortgaged Property | Mortgage Lender | Loan Amount |
|-------|--------------|------|--------------------|-----------------|-------------|
| 6 | Sirewl R. Cox | 4/25/2006 | 11 Roxton Street, Unit 3, Dorchester, MA in the name of S.G-R. | IndyMac Bank | $375,000 |
| 7 | Sirewl R. Cox | 6/19/2007 | 148 Stanwood Street, Unit 1, Dorchester, MA in the name of K.P. | IndyMac Bank | $346,750 |
| 8 | Sirewl R. Cox | 6/19/2007 | 148 Stanwood Street, Unit 2, Dorchester, MA in the name of L.B-A. | Washington Mutual Bank | $328,500 |

| Count | Defendant(s) | Date | Mortgaged Property | Mortgage Lender | Loan Amount |
|-------|-------------|------|--------------------|-----------------|-------------|
| 9 | Sirewl R. Cox | 11/5/2007 | 111 Fuller Street, Unit 1, Dorchester, MA in the name of K.P. | JP Morgan Chase Bank | $306,000 |
| 10 | Sirewl R. Cox Lord R. Allah | 12/21/2007 | 111 Fuller Street, Unit 2, Dorchester, MA in the name of S.V. | Wells Fargo Bank | $331,550 |

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNTS ELEVEN THROUGH SIXTEEN
**(Unlawful Monetary Transactions – 18 U.S.C. §1957)**

92.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of

this Indictment, and further charges that:

93.     On or about the following dates, in the District of Massachusetts, and elsewhere,

### SIREWL R. COX (1)
### and
### LORD R. ALLAH (2),

the defendants herein, did knowingly engage and attempt to engage in a monetary transaction, by,

through and to a financial institution, affecting interstate and foreign commerce, in criminally

derived property of a value greater than $10,000, the particulars of which are described below, and

which was derived from a specified unlawful activity, that is, Wire Fraud, in violation of 18 U.S.C.

§1343 and Bank Fraud in violation of 18 U.S.C. §1344:

| Count | Defendant | Specified Unlawful Activity | Transaction | Amount |
|-------|-----------|------------------------------|-------------|--------|
| 11 | Sirewl R. Cox | Wire Fraud | Electronic funds transfer on or about 7/25/2007 from an account of City Real Estate, No. xxxxxx1968, at Citizens Bank to an account of SIREWL COX and L.B-A., No. xxxxx9415, at Ameritrade. | $100,000.00 |
| 12 | Sirewl R. Cox | Wire Fraud | Electronic funds transfer on or about 11/07/2007 from an account of City Real Estate, No. xxxxxx1968, at Citizens Bank to an account of SIREWL COX and Strategy Investments, No. xxxxx4941, at Ameritrade. | $56,000.00 |

| 13 | Sirewl R. Cox | Bank Fraud | Electronic funds transfer on or about 12/24/2007 from an account of City Real Estate, No. xxxxxx1968, at Citizens Bank to an account of SIREWL COX and D.F., No. xxxxx9895, at Ameritrade. | $30,000.00 |
|---|---|---|---|---|
| 14 | Sirewl R. Cox | Bank Fraud | Electronic funds transfer on or about 12/24/2007 from an account of City Real Estate, No. xxxxxx1968, at Citizens Bank to an account of SIREWL COX and Strategy Investments, No. xxxxx4941, at Ameritrade. | $11,500.00 |
| 15 | Lord R. Allah | Bank Fraud | Withdrawal on or about 1/2/2008 from account of L.A. Properties, no. xxxxxx6889, at Citizens Bank. | $40,000.00 |
| 16 | Sirewl R. Cox Lord R. Allah | Bank Fraud | Transfer of funds on or about 1/2/2008 from account of L.A. Properties, no. xxxxxx6889, at Citizens Bank to account of City Real Estate, no. xxxxxx1968, at Citizens Bank by withdrawal and subsequent deposit of funds. | $50,000.00 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2)(A) and 28 U.S.C. § 2461(c))

94.     Upon conviction of one or more of the offenses alleged in Counts One through Five of this Indictment, the defendants,

**SIREWL R. COX (1)**
**and**
**LORD R. ALLAH (2),**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), jointly and severally, any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses.

95.     Upon conviction of one or more of the offenses alleged in Counts Six through Ten of this Indictment, the defendants,

**SIREWL R. COX (1)**
**and**
**LORD R. ALLAH (2),**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), jointly and severally, any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violations.

96.     Upon conviction of one or more of the offenses alleged in Counts Eleven through Sixteen of this Indictment, the defendants,

**SIREWL R. COX (1)**
**and**
**LORD R. ALLAH (2),**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), jointly and severally, any property, real or personal, involved in such offense, and any property traceable to such property.

97.     If any of the property described in paragraphs 94 through 96, above, as a result of any act or omission of the defendants –

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third party;
>
> c.  has been placed beyond the jurisdiction of this Court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. §853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in  subparagraphs (a) through (e) of this paragraph.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

Foreperson of the Grand Jury

RYAN M. DISANTIS
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS          $10/20/11$

Returned into the District Court by the Grand Jurors and filed.

2:20pm

Deputy Clerk