UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIREWL R. COX, | ) </br> ) </br> ) |
| Petitioner, | ) </br> ) |
| v. | ) Criminal No. 11-cr-10346-DJC </br> ) |
| UNITED STATES, | ) </br> ) |
| Respondent. | ) </br> ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                                                                                                                                                                            **August 7, 2018**

## I.    Introduction

Petitioner Sirewl R. Cox ("Cox") filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2255 based on the alleged ineffective assistance of his counsel at sentencing. D. 368. For the foregoing reasons, the Court DENIES the Petition.

## II.    Procedural Background

### A.    Procedural Background

A federal grand jury in the District of Massachusetts indicted Cox on October 20, 2011, with five counts of wire fraud, in violation of 18 U.S.C. § 1343, five counts of bank fraud, in violation of 18 U.S.C. § 1344, and six counts of unlawful monetary transactions, in violation of 18 U.S.C. § 1957. D. 2. The indictment charged that between March 2006 and August 2008, Cox engaged in a fraudulent scheme wherein Cox would purchase a multi-family building, divide the building into units, and arrange for straw buyers to purchase those units at an inflated price with mortgage loans that Cox applied for on behalf of the straw buyers with falsified information. D. 2 at 2-6. According to the indictment, Cox would pay the straw buyers an incentive payment and

promise them that they need not make any payment in connection with the purchase of the unit. D. 2 at 5-6. Because the straw buyers did not make payments on the mortgages, the mortgage loans went into default and the properties were foreclosed upon. D. 2 at 7. The indictment charged that Cox had completed this scheme on ten units in four buildings: 11 Roxton Street, in Dorchester; 153 River Street, in Mattapan; 148 Stanwood Street, in Dorchester; and 111 Fuller Street, in Dorchester. D. 2 at 7-16.

The jury trial on the indictment began on October 23, 2012 and ran for sixteen days, concluding on November 15, 2012. The jury returned a verdict of guilty as to four of the wire fraud counts, three of the bank fraud counts, and one of the unlawful monetary transaction counts. D. 208. After trial, Cox's appointed trial counsel, Albert F. Cullen, withdrew as Cox's attorney. D. 241. Michael C. Andrews was then appointed as Cox's attorney, D. 243, but subsequently withdrew, D. 279, after Cox retained private counsel, Barry P. Wilson ("Wilson") on or about October 11, 2013. D. 274.

The Probation Office prepared a presentence report ("PSR"). PSR at 1. The PSR estimated that the total losses caused by Cox's fraud added up to $7,867,766. PSR at 10. That calculation included not only the ten units that had been specified in the indictment, but an additional nineteen units in five properties. PSR at 8-9. The estimated losses relating the units for which Cox had been convicted added up only to $1,746,050; the losses relating to the units for which Cox had been acquitted added up to $791,600; and the losses relating to the units that had not been charged added up to $5,330,116. PSR at 8-9. Based on that loss estimate, the PSR applied a twenty-point enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i), leading to a total offense level of 37. PSR at 11-12. The total offense level of 37, combined with Cox's criminal history category of III, yielded an advisory guidelines range ("GSR") of 262 to 327 months. PSR at 29.

2

Cox, through his attorney at sentencing, Wilson, filed a set of objections to the PSR, in which he argued that the losses related to acquitted or uncharged conduct should not be considered in the loss calculation because "it represents purportedly related conduct, no evidence of which was produced at trial, or established in more than a conclusory fashion in the [PSR]." PSR at 35. Cox further contended that "no evidence is offered to prove Mr. Cox was even involved in the sale of the properties, much less that there was fraud involved, and that he participated in the fraud. It appears the prosecution simply burdened Probation with an offense conduct narrative, devoid of factual specifics or substantiating documentation, vitiating Probation's ability to conduct an independent review of the offense conduct." PSR at 37-38.

The Probation Office filed an amended PSR, in which it addressed Cox's objections. The amended PSR stated that the loss calculation was supported by a preponderance of the evidence, and that it was "not practical for the Probation Office to provide the details of every transaction in which the defendant was involved for the purposes of the [PSR]. Counsel for the government has provided the Probation Officer, the Court, and defense counsel with a large binder that includes supporting documentation for the loss calculation. The evidence supports that Cox did act as agent or broker in some instances and did obtain over . . . $7.5 million . . . in loan proceeds." PSR at 35.

On December 17, 2013, Cox (through attorney Wilson) filed a sentencing memorandum arguing that, among other things, the losses related to the acquitted and uncharged conduct had not been proven by a preponderance of the evidence. D. 287 at 4. Cox contended that "the government provided Probation and the defense with a binder of exhibits consisting of deeds to various properties, and a chart entitled 'Loss of Specified Properties.' In most of the deeds, Mr. Cox's name does not appear. There is no indication in the exhibit what, if any role he played in the

3

purchase of sale of the properties." D. 287 at 4-5. Cox thus contended that the loss calculation overstated the loss, and thus that the sentencing guidelines range was too high. D. 287 at 5.

On December 19, 2013, this Court held a sentencing hearing. D. 294. In that hearing, this Court heard from both parties regarding the loss calculation's inclusion of acquitted and uncharged conduct. D. 348 at 20. Counsel for the government stated that the uncharged transactions involved the same straw buyers as the charged transactions, the same types of false statements as the charged transactions, and payments to the same shell companies as the charged transactions. D. 348 at 21-22. Wilson, indicating that he had not been trial counsel, renewed his objection to the inclusion of acquitted and uncharged conduct, stating, among other things, that "this book of relevant [uncharged] conduct isn't even worth the paper it's printed on, it's not verified, it doesn't say how they came to these numbers." D. 348 at 24.

This Court stated that, after reviewing the trial exhibits and the binder submitted by the government, it adopted the PSR's calculation of the twenty-point enhancement reflected in the PSR based on the loss calculation that included the uncharged and acquitted conduct (although noting that it was not necessary to include the losses related to the acquitted conduct to reach the threshold for the twenty-point enhancement). D. 348 at 32. This Court adopted, as an advisory guideline range, the 262 to 327 months' imprisonment range specified in the PSR. D. 348 at 34. This Court then imposed a sentence of 150 months' imprisonment, significantly below the advisory GSR. D. 348 at 76. This Court then noted that "this sentence is commensurate with an advisory guideline sentencing range that is based on . . . on the loss amount associated with the counts of conviction" because the guideline range associated with that loss amount would have been 135 to 168 months. D. 384 at 77.

4

Cox appealed his sentence to the First Circuit. United States v. Cox, 851 F.3d 113 (1st Cir. 2017). In that appeal, he argued to the First Circuit that this Court "erred by simply adopting the PSR's sentencing recommendations without specific factual findings regarding each relevant conduct transaction." Id. at 121-22. After recounting the procedural history described above, the First Circuit stated that it "discern[ed] no error in the district court's decision to adopt the PSR's sentencing recommendations, which were fully supported by the evidence presented at trial and the voluminous supporting materials submitted by the government." Id. at 123. The First Circuit then affirmed Cox's sentence. Id. at 129.

### B. Cox's Grounds for Relief

In the Petition, Cox contends that his sentence was imposed in violation of the Constitution because he was deprived of his right to be represented by effective counsel during sentencing. D. 368 at 1. Cox contends that Wilson erred by failing to share the binder of materials on the related conduct provided by the government prior to the sentencing hearing with Cox, D. 368 at 2, and by failing to obtain trial transcripts and review them in preparation for sentencing. D. 368 at 4. If Wilson had done so, Cox argues, Wilson could have requested an evidentiary hearing, D. 368 at 25; argued that the documents in the binder provided by the government did not tie Cox to the uncharged transactions because Cox's name did not appear in them, D. 368 at 25; and presented this Court with "real facts supported by specific objections," to the documents in the binder. D. 368 at 26. A result of these errors, Cox contends, Wilson would have been able to challenge the loss calculation in the PSR successfully, resulting in a lower applicable guidelines range, and therefore a lower sentence. D. 368 at 20, 22.

### III. Standard of Review

Pursuant to 28 U.S.C. § 2255, an individual may move to vacate his sentence if such "sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that

5

lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)). "To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [the petitioner] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). "[T]o satisfy the 'deficient performance' prong, [the petitioner] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984). "In order to satisfy the 'prejudice' prong, [a petitioner] must establish that 'but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence.'" Id. (quoting Porter v. McCollum, 558 U.S. 30, 40 (2009)). Only a "reasonable probability" that is "sufficient to undermine confidence in the outcome" will satisfy the prejudice prong. Strickland, 466 U.S. at 694. Accordingly, "not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 693-94). It is well settled that the prejudice prong is a "highly demanding" and "heavy burden" for a petitioner to satisfy. Id. at 15 (internal citation omitted).

## IV. Discussion

Although it is not clear that Cox has satisfied the initial showing that the performance of his sentencing counsel was deficient, the Court shall focus instead upon whether Cox has satisfied the prejudice prong under the Strickland standard. See Knight, 447 F.3d at 15 (noting that a petitioner's "failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong"). The Court concludes that he has not done so.

The government, in opposing the Petition, contends that Cox cannot show prejudice because the evidence tying Cox to the relevant conduct included in the PSR loss calculation was overwhelming. D. 374 at 17. Specifically, the government notes that the documents in the binder showed that the "bulk of the proceeds" on each uncharged transaction went to one of two corporations that Cox controlled and used in the charged transactions for the fraud: "Strategy Investments" and "City Real Estates." D. 375 at 17-18.

Cox does not meet his burden of showing that there is a reasonable probability that the outcome of sentencing would have been different had Wilson obtained trial transcripts and provided Cox with a copy of the binder materials before sentencing. Even assuming *arguendo* that if Wilson had done these things, and then that counsel would have moved for an evidentiary hearing (and that the Court would have granted such hearing) and counsel at such hearing had challenged the documents in the binder on the grounds that there was not sufficient evidence tying Cox to the uncharged transactions, there is still no showing that those efforts would have resulted in a different sentence. At the sentencing, Wilson did object to the materials in the binder on the ground that there was not sufficient evidence tying Cox to the uncharged transactions. That argument by Cox's counsel was pressed and has now failed three times: first, in the objections to the PSR, when it was rejected by the Probation Office; second, at sentencing, when it was rejected by this Court; and third, on direct appeal, when it was rejected by the First Circuit. The argument failed because there was substantial evidence tying Cox to the uncharged transactions through the companies that Cox controlled and used for the charged fraudulent transactions, as shown by testimony at trial. Furthermore, there is no suggestion given the abundance of trial testimony and documentary evidence presented at trial and sentencing and known to the Court at sentencing, that a request by Wilson for an evidentiary hearing would have been successful. A district court, in

determining whether to hold an evidentiary hearing prior to sentencing, should "consider the totality of the circumstances and assess the likely utility of a hearing in that light." United States v. Rodriguez, 336 F.3d 67, 70 (1st Cir. 2003). Lastly, in the Petition, Cox mounts his challenge on the documents gathered in the government's binder by listing several specific transactions, and for each of those transactions, making conclusory statements that the evidence does not show Cox's criminal involvement in the transaction. D. 368 at 31-36. None of these arguments, singularly or cumulatively, overcome the substantial evidence supporting the determinations made at the sentencing as to relevant conduct for the determination of the advisory GSR or the sentence that the Court ultimately imposed. For all of these reasons, Cox has failed to satisfy the prejudice prong under Strickland and the Court denies the Petition.

## V. Certificate of Appealability

A petitioner may receive a certificate of appealability only if he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion. Id. Accordingly, the Court is not inclined to issue a certificate of appealability but will give each Defendant until August 29. 2018 to file a memorandum, not to exceed five pages, if he desires to address the issue of whether a certificate of appealability is warranted as to the Petition.

## VI. Conclusion

For all of the foregoing reasons, the Court DENIES Cox's petition for writ of habeas corpus, D. 368.

**So Ordered.**

/s/ Denise J. Casper
                                                                United States District Judge